PETRONA PAGÁN, tercerista y apelante, *v.* F. FRESNO & Co., S. EN C. y José FUENTES VALLE, demandados y apelados.

No. 4460.—*Sometido:* Junio 14, 1928. *Resuelto:* Mayo 10, 1929.

*Fernando Gallardo Díaz,* abogado de la apelante; *González Fagundo & González Jr.,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal

En agosto 21, 1923, F. Fresno & Co., S. en C., entabló un pleito ante la Corte Municipal de Yabucoa contra José Fuentes Valle, y en agosto 31 embargó, como de la pro-

piedad de Fuentes, una casa y solar sitos en la calle Muñoz Rivera, del municipio de Yabucoa.

Petrona Pagán entonces entabló el presente procedimiento de tercería de dominio, y apela de una sentencia adversa dictada después de celebrarse un juicio *de novo* en la corte de distrito. La historia anterior de este caso puede hallarse en *Pagán* v. *Fresno & Co.*, 36 D.P.R. 539. La única contestación interpuesta por Fresno & Co. fué una contestación general de la alegación referente al dominio, y la admisión de todos los otros hechos alegados en la demanda.

Durante la vista en la corte de distrito la demandante presentó un documento notarial fechado agosto 28, 1923, según el cual Secundino Rodríguez ratificaba una venta que se decía había sido formalizada en documento privado otorgado anteriormente por él a favor de la demandante en septiembre 30, 1919. Esta escritura fué admitida sin objeción alguna por parte de la demandada, y la demandante dió por terminado su caso.

Entonces fué llamada la demandante como testigo de la demandada y declaró substancialmente: que ella había adquirido la casa de Secundino Rodríguez unos cinco años antes del juicio y pagaba las contribuciones de la misma de conformidad con los documentos que tenía en su poder; que Secundino Rodríguez le hizo a la demandante un papel de venta ante Renato y una escritura ante Fernando Gallardo; que conocía a José Fuentes, su yerno; que cuando ella compró esa casa ésta estaba en malas condiciones y hubo que destruirla para hacer otra nueva, la que tenía como dos años de haber sido fabricada; que las maderas para la nueva casa fueron compradas al Sr. Martínez, y que ya se habían pagado; que el encargado de comprar dichas maderas fué el mismo yerno Fuentes Valle; que la persona que le dió el dinero para comprar esa casa fué su hijo Feliciano Rodríguez; que no fué José Fuentes Valle el que compró la casa;

que José Fuentes Valle fué el encargado de comprar las maderas a F. Fresno & Co., pero que dichas maderas fueron pagadas con cheques que su hijo ganó en San Juan.

José Martínez, socio gestor de Fresno & Co., también fué llamado como testigo de la demandada y declaró que la demandante compró las maderas de la casa en litigio a Fresno & Co.; que Fresno & Co. tenía negociaciones con José Fuentes desde 1916, vendiéndole maderas; que las maderas que se le vendieron fueron para fabricar una casa que tiene Fuentes en la calle Muñoz Rivera, de Yabucoa; que al cobrarle las maderas a Fuentes éste le dijo que iba a vender las casas para pagarle, y no le pagó, pero que después le ofreció hipotecarle las casas y luego le vendió a Petrona Pagán la casa objeto del presente litigio; que hizo gestiones de cobro de las maderas a Fuentes y no le pagó; que entonces presentó una demanda en la Corte Municipal de Yabucoa y parece que en aquellos días Fuentes vendió las casas, pero que no había pagado lo que debía; que José Fuentes Valle y su familia estaban en posesión de las casas en concepto de dueños; que Fuentes le ofreció hipotecar o vender las casas para pagarles lo que les debía; que además de las maderas tomadas a Fresno & Co., el testigo, como gestor de dicha sociedad, le facilitó a Fuentes $150 para pagar una casa vieja y el sitio donde se fabricó la casa a que alude la presente demanda; y que la casa vieja y el sitio fueron comprados por Fuentes a Juan de Mata.

La prueba documental de la demandada consistió de dos certificaciones. Una de ellas fué expedida por el Secretario de la Corte Municipal de Yabucoa y demuestra la fecha en que se radicó la demanda original en el caso de *Fresno & Co.* v. *Fuentes,* así como la fecha en que se practicó el embargo. La otra fué librada por el Departamento de Tesorería, y revela que en febrero 7, 1923, y en una declaración jurada que prestara en relación con el pago de las contribuciones, Fuentes declaró que la finca en controversia le pertenecía.

El juez de distrito en su relación del caso y opinión no discute la declaración de Martínez, sino que basa sus conclusiones respecto a que la venta a Petrona Pagán fué un traspaso simulado, en el hecho de que para fines del pago de contribuciones, Fuentes había declarado en febrero de 1923 que la propiedad era suya, unido a la circunstancia de que la escritura de ratificación fué otorgada por Rodríguez pocos días después de entablarse el litigio contra Fuentes. No podemos estar de acuerdo con las conclusiones a que así se ha llegado.

El artículo 21 de nuestra Ley de Evidencia lee así:

"Se presume que un testigo dice la verdad. Esta presunción, sin embargo, puede ser rechazada, por la forma en que declare, por el carácter de su declaración o por evidencia que afecte su veracidad, honradez, integridad, o móviles, o por evidencia contradictoria."

Entre las presunciones controvertibles establecidas por el artículo 102 hallamos:

"1. Que una persona es inocente de delito o falta.

\* \* \* \* \* \* \*

"19. Que las transacciones privadas fueron realizadas con rectitud y en debida forma."

Véase también *Ana María Sugar Co.* v. *Castro,* 28 D.P.R. 241, y los casos allí citados, donde se han discutido y aplicado los principios que anteriormente se enuncian.

La declaración de Petrona Pagán como testigo de la demandada era suficiente para establecer *prima facie* un caso de dominio, independientemente de la escritura de ratificación o del documento privado otorgado en septiembre de 1919.

De los autos no se desprende si Petrona Pagán declaró o no como testigo en el juicio celebrado ante la corte municipal con anterioridad al 9 de febrero de 1924. En su demanda radicada en octubre de 1923 se alega que adquirió por compra a Secundino Rodríguez en septiembre 30, 1919. La primera sentencia de la corte de distrito fué dictada en marzo 18, 1926, después de celebrarse un juicio *de novo,* pero sin

entrar en los méritos del caso. En abril de 1927 esa sentencia fué revocada y se ordenó un nuevo juicio.

El caso fué visto por segunda vez ante la corte de distrito en agosto 17 de dicho año. Entonces la cuestión fué sometida para su resolución de acuerdo con la prueba aducida en el juicio anterior, y la exposición del caso que tenemos ahora a la vista es la misma que fué usada en la apelación anterior.

Si Secundino Rodríguez no estaba en posesión de la casa y solar en 1919, si no tenía el título de la misma o no otorgó el supuesto documento privado ante Renato en septiembre 30 de dicho año, la demandada tuvo amplia oportunidad para averiguar estos extremos y ofrecer prueba adicional durante el nuevo juicio ordenado por esta corte. Si Feliciano Rodríguez, el hijo de la demandante, no trabajaba en San Juan, o no ganaba lo suficiente que le permitiera reunir el dinero con que adquirir la casa y el solar, o para pagar las maderas usadas en la reconstrucción de la casa, la demandada pudo sacar a relucir la verdad. Si Secundino Rodríguez estaba emparentado por consanguinidad o afinidad, bien con Petrona Pagán o con Fuentes, es un hecho que no ha sido revelado por los autos. No hay prueba alguna de que existiera amistad o relaciones comerciales entre Rodríguez y Fuentes. Tanto la declaración de Petrona Pagán como la escritura de agosto 28, 1923, permanecen incontrovertidas en los autos, a menos que hayan sido afectadas por la declaración de Martínez o por las circunstancias indicadas en la opinión del juez sentenciador.

Martínez habla indistintamente de la casa en controversia y de otra casa o casas pertenecientes a Fuentes. Su declaración es vaga y contradictoria por sí misma, pero la manifestación de que la demandante compró las maderas para la casa en controversia de los Sres. Fresno & Co., es enteramente clara. Este testigo no dice que la casa perteneciente a Fuentes, sita en la calle Muñoz Rivera y para la cual Fuentes compró maderas, fuera la casa reclamada

ahora por la demandante. Sí dice que Fuentes había expresado la intención de vender "las casas," y que al solicitársele el pago vendió una de ellas a Petrona Pagán. Tal declaración no requiere seria consideración como tendente a demostrar una conspiración entre Fuentes y su suegra, o entre uno de ellos o ambos y Rodríguez. La posesión de "las casas" por José Fuentes y su familia en concepto de dueños, no privaba a la demandante de su título.

La declaración de que Fuentes adquirió la casa y solar que ahora están en controversia, de Juan de Mata, con dinero suministrado por Fresno & Co., es más seria y definitiva. Pero aun en esta ocasión no se menciona la fecha, ni se identifica a Juan de Mata. Fuentes pudo haber adquirido de Mata en cualquier época posterior a 1916 y luego haberle vendido a Rodríguez, o sea, a la persona que le vendió a Petrona Pagán, en cualquier época anterior al 30 de septiembre de 1919. Aun si no fuese así, el título que la demandante derivó de Rodríguez podía resultar superior al recibido por Fuentes de Juan de Mata. Rodríguez, por lo menos, compareció ante cierta clase de escribano o testigo en 1919, y nuevamente ante un notario público en 1923. La única mención que se hace de Juan de Mata es la que aparece en la declaración de Martínez. De todos modos, si según manifestó Martínez al principio, Petrona Pagán adquirió de los Sres. Fresno & Co. las maderas con que construir la casa reclamada ahora por ella, entonces la enajenación de la propiedad hecha por Rodríguez no defraudaba a los Sres. Fresno & Co.

El emplazamiento en la acción instituida por Fresno & Co. contra Fuentes no fué expedido hasta el 31 de agosto, o sea, varios días después de haber Rodríguez otorgado la escritura de ratificación. Nada hay que indique que Fuentes tuviera conocimiento de la acción pendiente antes de haberse diligenciado el emplazamiento. La única base para la teoría relativa al dominio de Fuentes es el hecho de que él declaró la propiedad a su nombre para fines contributivos

en febrero de 1923. No importa cuáles hayan sido sus motivos, ni esas circunstancias, ni la declaración de Martínez, ni el efecto de ambas combinadas es suficiente para destruir el caso establecido *prima facie* por la demandante.

La prueba en su totalidad levanta una seria sospecha respecto al otorgamiento de un traspaso hecho de buena fe en 1919, así como respecto al móvil y validez de la escritura otorgada en 28 de agosto de 1923. Pero no hallamos la prueba clara y convincente que se exige para establecer la teoría de una enajenación fraudulenta.

*La sentencia apelada debe ser revocada.*